615 So.2d 349 (1993)
Kimuel LEE
v.
Mrs. Scott WOODLEY.
No. CA 91 0303.
Court of Appeal of Louisiana, First Circuit.
January 21, 1993.
Rehearing Denied February 22, 1993.
Writ Denied April 30, 1993.
*350 Kimuel Lee, Beverly Hills, CA, for plaintiff-appellant.
Terri A. Maderson Collins, and Lawrence Durant, Baton Rouge, for defendant-appellee.
BEFORE LOTTINGER, C.J., and EDWARDS, FOIL, GONZALES and FOGG, JJ.
GONZALES, Judge.
This is an appeal of sanctions imposed upon plaintiff-appellant, Kimuel Lee, for filing a lawsuit against defendant, Mrs. Scott Woodley. The Baton Rouge City Court found, on Mrs. Woodley's motion, that Lee had filed his defamation suit against her merely as harassment. Mr. Lee contends that the motion for sanctions was heard without prior notice and violated his due process rights under the Louisiana and United States Constitutions. He also contends that the sanctions were improperly imposed before he had completed discovery in the case.

FACTS
On July 17, 1989, Mr. Lee and Mrs. Woodley were both present at a Broadmoor Residents Association meeting. Mr. Lee was attempting to have a lot in Broadmoor Subdivision rezoned from residential to buffer zone, in order to open a law office at his house. Mrs. Woodley opposed the rezoning request. Mr. Lee was making a presentation at the meeting in support of his zoning request when he was asked by Mrs. Woodley why he had purchased the house. Mr. Lee answered that he purchased the house to live there. At that time, Mr. Lee alleges, Mrs. Woodley said "ha" or "hunnh." The next day, July 18, 1989, Mr. Lee filed suit against Mrs. Woodley in the Baton Rouge City Court, alleging that Mrs. Woodley defamed him at the meeting. Mrs. Woodley filed dilatory and peremptory exceptions and a motion to strike on September 1, 1989. Thereafter, the trial court ruled in favor of the exception of vagueness and in favor of the motion to strike. The exception of no cause of action was denied. On June 15, 1990, interrogatories and a request for production of documents were propounded to Mr. Lee. On August 1, 1990, a motion for sanctions under Louisiana Code of Civil Procedure article 863 was filed on behalf of Mrs. Woodley and on August 13, 1990, a motion to compel was filed. The motion for sanctions and motion to compel were served personally on Mr. Lee and subpoenas were issued which were served personally on Mr. Lee. On August 14, 1990, Mr. Lee filed a motion to dismiss the suit with prejudice. The court granted the motion to dismiss, then vacated the granting of dismissal. The hearing on the motion for sanctions and the motion to compel was scheduled for September 12, 1990. Mrs. Woodley and her counsel appeared at the hearing. Mr. Lee neither appeared nor requested a continuance. A bench warrant was issued for Mr. Lee. Subsequently the bench warrant was recalled at the request of Mr. Lee's counsel, and the matter was rescheduled for hearing on November 21, 1990. After the hearing, Mrs. Woodley's motion for sanctions was granted. The judgment provides that Mr. Lee pay $7,614.15 as attorney's fees, plus interest and costs. Mr. Lee filed a suspensive appeal.

*351 THE MERITS OF THE DEFAMATION ACTION
The elements necessary to recover for defamation are: (1) defamatory words, (2) communicated to some person other than the one defamed, (3) falsity, (4) malice, actual or implied, and (5) resulting injury. Palmer v. Fireman's Fund Insurance Company, 395 So.2d 396, 397 (La. App. 1st Cir.), writ denied 400 So.2d 668 (1981); Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196, 198 (La.1980). Further, in making a determination whether the words are defamatory, the court must look not only to the words themselves but also to the context and circumstances in which they were used. Palmer v. Fireman's Fund Insurance Company, 395 So.2d 396, 397. First we must determine whether the colloquial expression "hunnh" or "ha" is a factual assertion or a statement of opinion. It is clear from the law that truth is a defense to defamatory statements. One would ask the following question: is the expression "hunnh" or "ha" susceptible of being truthful or not? Obviously the answer is that it can be neither truthful nor untruthful. It is simply not an expression of fact. It is obvious that "hunnh" or "ha" was an expression of opinion by Mrs. Woodley casting some doubt as to either the accuracy or the truthfulness of the statements made by Mr. Lee.
Opinions may be harsh or critical or even abusive yet still not subject the speaker or writer to civil liability. In this connection, a publication is not libelous merely because the opinion may be expressed in terms of strong invectives, profanity, or sarcastic language.
Even though an opinion may contain factual assertions, there is no defamation if the speaker discloses the facts underlying his opinion. A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is ... The question whether a statement has a defamatory meaning does not even arise unless the statement is an assertion or implication of fact.. Whether a statement constitutes fact or opinion is a question of law for the court to decide. 53 C.J.S. Libel and Slander § 12 (citations omitted).
[T]he First Amendment freedoms as defined by the New York Times-Gertz series of decisions afford, at the very least, a defense against defamation actions for expressions of opinion about matters of public concern made without knowing or reckless falsity. Mashburn v. Collin, 355 So.2d 879, 885 (La. 1977). Mere harsh opinion does not result in liability for defamation. Foote v. Sarafyan, 432 So.2d 877, 880 (La.App. 4th Cir.1982), writ denied 440 So.2d 736 and 737 (1983).
Even assuming it is a factual utterance concerning his credibility, its most logical explanation is that it means she does not believe him rather than an expression that his statement is not truthful. If freedom of speech has any meaning, it means every citizen has the unfettered right to express their own disbelief in the statements of others.
When called upon by the court to explain how such a statement could be defamatory, it was only necessary for Mr. Lee to advance oral argument convincing the judge that there was some legal support for his legal concept. The expression in question, under the circumstances given, does not constitute defamatory words because the consequences of the falsity of the statement "to live in and I did live there" do not expose Mr. Lee to contempt, hatred, ridicule or disgrace. See Morris v. Gray & Company, Inc., 378 So.2d 1081, 1082 (La. App. 4th Cir. 1979). It is the duty of an attorney before he files a lawsuit to ensure that there is some existing theory of law or a reasonable extension of an existing theory of law that would support his cause of action. Louisiana Code of Civil Procedure article 863 provides in part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him *352 that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
The source for La.C.C.P. art. 863 is Federal Rule of Civil Procedure 11. Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898, 902 (La.App.2d Cir.1990) provides us with an analysis of the requirements of article 863:
Rule 11 and Art. 863 require the attorney or litigant who signs a pleading to make an objectively reasonable inquiry into the facts and the law. Subjective good faith does not satisfy the duty of reasonable inquiry. Thomas v. Capital Sec. Services, 836 F.2d 866, 873-874 (5th Cir. 1988).
Among the factors to be considered in determining whether a reasonable factual inquiry has been made are
the time available to the signer for investigation;
the extent of the attorney's reliance on his client for the factual support for the document;
the feasibility of a prefiling investigation;
whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
the complexity of the factual and legal issues; and
the extent to which development of the factual circumstances underlying the claim requires discovery.
Mr. Lee is himself the plaintiff in this case. He does not have to rely on factual assertions by some client. Mr. Lee has yet to advance any legal theory which would support his claim that the use of the colloquial expression "hunnh" or "ha" constitutes a defamatory remark. Mr. Lee had a year to file suit. He chose to file suit the day after the meeting, apparently in order to intimidate Mrs. Woodley so that she would discontinue her opposition to his rezoning request. This motive becomes more clear upon reading a letter Mr. Lee wrote to Mrs. Woodley's attorney, which states in part:
In desire of economic settlement, you might consider the following ideas. I am complaining of a defamation. If your client would be willing to renounce the defamation, or otherwise correct her position at the upcoming zoning hearings, I would be willing to consider dismissal, provided such disposition has ethical foundation. I want the zoning approved. I consider the failure last year to be a direct result of your client. She might remedy that harm by argueing (sic) as a proponent on July 23, 1990 ...
The record reveals that on July 24, 1990, Mr. Lee filed a second defamation suit. This second suit, filed against Ms. Jane Patterson, alleges that Ms. Patterson defamed Mr. Lee at a Broadmoor Residents Association meeting. This petition alleges that remarks made by Mrs. Patterson caused Mr. Lee the loss of a law office. It appears from the record that Mr. Lee used his position as a lawyer to intimidate anyone who spoke out at a public meeting against his rezoning request. Upon thorough review of the record, we find no abuse of discretion in the trial court's finding that the defamation suit filed against Mrs. Woodley by Mr. Lee was filed for an improper purpose and because it knowingly contains allegations not well grounded in fact on the issue of damages (discussed later).

THE SANCTIONS HEARING AND RIGHT TO DISCOVERY
Under La.C.C.P. art. 863, no sanctions can be imposed unless there is a hearing first. However, the article does not provide a requirement for notice of such a hearing to be given. Obviously, due process requires that reasonable notice be given. Such notice would not have to be in writing, and actual notice would be sufficient. Mr. Lee was given actual notice of the hearing by virtue of the subpoena. Mr. Lee argues that he did not have adequate *353 notice of the hearing, however, he filed an opposition to the motion for sanctions and a counter motion for sanctions against Mrs. Woodley. Also, Mr. Lee appeared at the hearing, with counsel, Mr. John Tyler, although Mr. Tyler left to go to another hearing and Mr. Lee then represented himself at the hearing. The only possible purpose for Mr. Tyler's presence was in connection with the sanction hearing, since Mr. Tyler was not counsel of record for the case on the merits. In this representation, he never urged to the trial court a lack of adequate notice of the hearing, nor did he request a continuance or additional time to prepare for the hearing. All of these facts undermine the claim by Mr. Lee on appeal that he did not have adequate notice of the hearing. There is no merit to Mr. Lee's argument that he was not given adequate notice of the sanctions hearing.
As to Mr. Lee's argument that he was not given a full hearing, a review of the record shows that after a lengthy hearing, Mr. Lee was cut off only on cross-examination of the details of the bill for legal services. No harm accrued to him, because the judge only considered the bill as evidence supporting his finding that $125 per hour was a reasonable rate of attorney fees. Under La.C.C.P. art. 1635, contemporaneous objection must be made to procedural matters before the court and the grounds for the objection must be given. Mr. Lee failed to object at the hearing that he was not given a full hearing, and we cannot supply for Mr. Lee an objection he did not make. Mr. Lee also contends that he had not completed his discovery at the time of the sanctions hearing. Discovery on the merits of his case has nothing to do with sanctions. Mr. Lee had sixteen months from the date he filed suit to the date of the sanctions hearing to conduct any desired discovery on this case. The issue of damages obviously is a fact question on which witnesses could be called and testimony could be given. However, in view of the fact that the record reveals that Mr. Lee suffered no damages, because he was a full time law student at the time he filed suit, and had no ongoing law practice, it is difficult to see how he could put on evidence to show that there were, in fact, some damages. Mr. Lee's answers to Mrs. Woodley's interrogatories reveal the following:
During the years 1988 and 1989 plaintiff was a full time student and was not employed on a remunerative basis. There was no expense accounts or per them during 1988, 1989 or 1990. Plaintiff received no wages or compensation during 1988 or 1989 because there was no employment. When an amount of gross income is determined for the current 1990 year, such information will be forwarded forthwith. Plaintiff was a dependent in 1988 and 1989.
Knowing full well the truth of the above admissions, Mr. Lee alleged in his first amended petition:
Loss of profits from Law Office which was scheduled to open at profit basis of $10,000 per month, for twelve months until zoning can be approved.
In his memo supporting his counter-motion for sanctions against Mrs. Woodley, Mr. Lee argues:
By a well calculated omission and a bold misstatement of a material fact counsel seeks to mislead this Court into imposing sanctions against plaintiff. Such a ploy deserves the stiffest sanctions.

The omission of the fact that Mr. Lee was not a practicing attorney at the time and his bold misstatement of loss of income likewise deserve serious consideration.
This Court is in the position of deciding whether to allow an attorney to use his profession to intimidate an individual who chooses to speak out at a public meeting, or to stand up for the individual. We believe individual rights must be protected under the circumstances of this case. Paraphrasing Robert F. Kennedy: "If not us, who? If not now, when?" We, as the appellate court, are the right court at the right time. For the foregoing reasons, we affirm. Mr. Lee is cast with costs.
AFFIRMED.
LOTTINGER, C.J., dissents and assigns written reasons.
*354 FOIL, J., dissents for the reasons assigned by LOTTINGER, C.J.
LOTTINGER, Chief Judge, dissenting.
I dissent for the following reasons.
Mr. Lee argues in brief, and the record discloses, that once this matter came on for hearing, the court improperly limited his ability to challenge Mrs. Woodley's contention that the attorneys' fees allegedly due were in fact due. The sanctions at issue were imposed pursuant to La.Code Civ.P. article 863, which article requires, in paragraph (E), that the court allow the party being sanctioned to "present any evidence or argument relevant to the issue of imposition of the sanction." This provision is more comprehensive than Federal Rule Civ.P. rule 11, which does not specify the type of hearing to be accorded a sanctioned party. Therefore, federal decisions in the area are of no help in light of Louisiana's explicit provision for the type of hearing to be held.
The judge hearing the motion told Lee that he could not traverse the attorneys' fee bills (improperly admitted into evidence over Lee's hearsay objection) forming the measure of Mrs. Woodley's claimed sanctions because of a time problem. Apparently, the court had other matters scheduled for which other litigants were present and waiting. This prompted the judge to cut short the hearing.
The trial court improperly curtailed Lee's right to present his evidence, or to challenge Mrs. Woodley's evidence, under the above-quoted provision because it did not follow section (E)'s directive regarding the scope of the hearing that must be held. Rather than cut short the hearing, the judge should have rescheduled the matter until a time when the court's calendar would have permitted the type of full hearing called for in article 863. Sanctions are penal in nature, and should be imposed hesitatingly and only after a full hearing into the necessity for them, their nature, and their measure.
Even assuming arguendo the majority is correct in affirming the imposition of sanctions, the majority falls into even more grievous error when it affirms the $7,614.15 judgment in attorney's fees for an allegedly frivolous lawsuit.
The evidence in this record is scanty almost to the point of non-existence as to the issue of attorney's fees. This is particularly so when the only evidence as to attorney's fees is a copy of the bill from Mrs. Woodley's attorney for service rendered. When this bill was introduced, it was properly objected to as hearsay, an objection which should have been sustained, but was erroneously overruled by the trial court.[1]
The majority compounds the trial court's error when it agrees with this exorbitant attorney's fees award. Absent any evidence of the time spent by counsel in defending this case, the court is left with the bare record from which to make an award. Regretfully, the majority is totally off-base and abuses the discretion of this court in concluding that an attorney's fee of $7,614.15 is justified.
Therefore, I dissent.
GONZALES, Judge.

ON DENIAL OF REHEARING.
The record is not scanty as to evidence of the amount of attorney time and the effort needed to refute this suit, frivolous or otherwise. The trial court was fully capable of determining a reasonable fee for the legal activities in opposition to Mr. Lee's lawsuit. As to the adequacy of the hearing, the only time the trial judge cut Mr. Lee off was when he was redundantly going *355 into the attorney fees bill item by item. We quote from the transcript, at page 35:
Q. And at that time did she tell you that she was going to bill you for thatgoing to that meeting?
A. I assumed she would. Yes. No, she did not tell me specifically, I assumed she would. I did take out her time from 5:00 until about 7:00 P.M.; five til'.
Q. You just said a moment ago, that in the beginning Mrs. Maderson told you she would see whether or not there would be expenses, and is [sic] not true that this is actually only the second hour that she spent on the case?
A. I'm sure it is, but what Iwhat went down was
MR. DURANT: Your Honor, I'm going to object on the grounds of relevancy of this. The only question now is does she owe that money, did she receive that bill, and is she obligated to pay it. That's the only question.
THE COURT: That's right. I'mI willI'm inclined, Mr. Lee, to be patient and listen to what you have to say, but I'm also inclined to agree with Mr. Durant. This is the bill; and the question is whether or not that's the bill and whether or not she [sic] obligated to pay it.
MR. LEE: Yes, Your Honor, that's true, however
THE COURT: All right. Mr. Lee, I'm not going to sit here and let you go down each item that's listed on those three pages of charges.
No harm accrued from this because full consideration of the amount of attorney fees was given by this court. The courts have determined the attorney fees must be actually incurred and reasonable. Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co., 112 F.R.D. 355, 359 (S.D.N.Y.1986). The majority of the federal courts in interpreting Federal Rule 11 have adopted the abuse of discretion rule. See Thomas v. Capital Security Services, Inc., 836 F.2d 866, 873 (5th Cir.1988). We did not rely entirely on the bill for attorney fees, but drew on our experience on the bench and our knowledge of the difficulty of defending a defamation action in making our determination that the sanctions awarded were not an abuse of discretion.
NOTES
[1] During original oral argument Mrs. Woodley's counsel in answer to a question concerning the hearsay objection argued that an attorney handling a case cannot also be a witness in that case. Counsel is mistaken. See Rules of Professional Conduct, Rule 3.7. Lawyer as witness, which in part provides: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:... (2) The testimony relates to the nature and value of legal services rendered in the case...." However, on reargument, Mrs. Woodley's counsel conceded the objection was valid, but argued that the court had the inherent authority to fix attorney's fees after a review of the record.